LIONEL HAGENAERS and ARMAND BATTA, Copartners Doing Business under the Firm Name of LIONEL HAGENAERS & Co., Respondents, *v.* LUCAS CABALLERO and Others, Copartners Doing Business under the Firm Name of CABALLERO HERMANOS, Defendants, Impleaded with JULIO C. CABALLERO, Appellant.

First Department, July 3, 1919.

Fraud — action to recover damages — waiver of fraud by entering into new agreement as to payment and security for money fraudulently obtained — pleading — necessary parties plaintiff — election — splitting causes of action — appeal, right to recover as for money had and received where case based on fraud.

Where there were mutual dealings between the parties and it was claimed that the defendants obtained money from the plaintiffs fraudulently, an agreement entered into thereafter whereby the defendants gave security and an increased rate of interest in consideration of an extension of time by the plaintiffs for payment on a current account, including the amount alleged to have been fraudulently obtained, the plaintiffs thereby waived any right of action they had upon the fraud, and have only their right of action for the balance due under the account current.

In an action for fraud it is necessary that all the parties interested in and damaged by the fraud should be made parties plaintiff, or those who bring the action must prove an assignment to them by the others of their interest.

Where the plaintiffs and others have two causes of action between which they can elect, one in contract and one in tort, and accept an assignment from the others interested, of the contract action, they thereby ratify the election made by the others, and cannot thereafter sue upon their own interest in tort and on the assigned interest of the others upon the contract; the cause of action cannot be split.

Where an action is brought and tried on the theory of tort and to recover damages for fraudulently obtaining money, the plaintiffs cannot be allowed to recover on appeal as for money had and received.

APPEAL by one of the defendant partners, Julio C. Caballero, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 26th day of March, 1918, upon the verdict of a jury rendered by direction of the court.

*Herbert Goldmark* of counsel [*Perry Allen* with him on the brief; *Phanor J. Eder*, attorney], for the appellant.

*Clarence De Witt Rogers* of counsel [*William R. Brinckerhoff*, attorney], for the respondents.

PAGE, J.:

The plaintiffs, as agents of Pinto, Leite & Nephews of London, Eng., transacted business with the defendants for a period of several years; in the profits or losses of these transactions the plaintiffs shared. These transactions consisted of loans made for the purpose of erecting mills and other buildings for the Sociedad Industrial Franco-Belga, in Colombia, as security for a portion of which the plaintiffs or their principal held securities of the Sociedad Industrial Franco-Belga. Other transactions were had in the consignment of merchandise by the defendants to the plaintiffs. The course of dealing between the parties with respect to these consignments was, that the defendants would ship the goods by river steamers and railroad to Cartegena and thence by steamship to New York. The bills of lading and way bills for the interior transportation would be mailed to the plaintiffs, the way bills being sent first with the notification of the drafts, and the drafts against the consignments would be presented through banks. The plaintiffs would sell the goods consigned and repay themselves for the advances, charging a commission of two and one-half per cent and interest at the rate of ten per cent per annum.

In the latter part of 1912 the defendants forwarded way bills and drew drafts against the consignments, which the plaintiffs paid, but goods to the extent of 2,249 bags of coffee and 8,001 raw hides did not arrive. One of the defendants wrote to the plaintiffs, admitting that the goods called for by these way bills were never shipped; offering as security for the payment of the balance due upon their account current, to transfer their stock in the Sociedad Industrial Franco-Belga and in an emerald mine, and to give a mortgage upon certain real estate that they owned, provided they were given a year in which to pay the balance due on their account current, which at that time amounted to $110,856.23, and was largely

in excess of the amount due on the drafts. In reply, Lionel Hagenaers, on behalf of the plaintiffs, wrote on March 19, 1913, that they would wait for payment until September 30, 1913, and would accept the collateral offered, and that at the expiration of that time, if the account was not liquidated, they would take into due consideration an extension. They also insisted that interest on the account should be calculated at the rate of twelve per cent, instead of ten per cent, from the first of the preceding January and thereafter until the account was settled. The proposition was accepted by the defendants and the collateral given. On January 1, 1913, the debit balance against the defendants on plaintiffs' books was $110,856.93. Thereafter statements were rendered, showing no further debits except for interest at the rate of twelve per cent, but credits for remittances and the application of the proceeds of the emerald mine stock (the company having been liquidated); so that on January 1, 1915, the debit balance was $71,765.98, which is the amount for which judgment is demanded in the complaint.

The summons and complaint were served on Julio C. Caballero, one of the members of the firm, who resided in New York and who did not personally participate in the fraudulent transaction. This defendant answered with a denial of the material allegations of the complaint, either upon information and belief, or of sufficient knowledge or information to form a belief; and as a first defense, a waiver and condonation of the alleged fraudulent transactions; second defense, payment and a counterclaim for an accounting and set-off.

We were impressed, after an examination of the record, with the strange coincidence that the balance of the account current, which was shown to be due by statements rendered by the plaintiffs to the defendants, was for the exact amount alleged to be due upon the fraudulent drafts, although it appeared that the original balance due on the account was greatly in excess of the amount of the fraudulent drafts. The complaint did not set out each draft and show the particular shipment evidenced by the fraudulent way bill upon the faith of which the draft was paid, but alleged generally that drafts were drawn and paid as shown by Schedule A attached to the complaint, amounting to the aggregate sum of $87,778.98,

and that way bills were forwarded purporting to show the shipment of 2,249 bags of coffee and 8,001 raw hides, as shown by Schedule B attached to the complaint. The drafts and way bills appear to have been received in evidence under one exhibit number, but have not been printed. A translation of the correspondence, however, was marked for identification and seems to have been subsequently introduced in evidence. Comparing Schedules A and B with the facts as disclosed by this correspondence, so far as it is possible to separately identify the way bills, we have discovered these to be the facts:

In Schedule A, the first item is part of draft No. 386 for $3,000, dated September 1, 1911. In Schedule B, the first item is way bill No. 194, dated August 29, 1911, 29 bags of coffee. The letter of September eleventh, in which was inclosed way bill 194, and in which is notification of draft 386, states the transaction to be as follows: Way bill 193 for 70 bags of coffee, $1,360.80; way bill 194 for 80 bags of coffee, $1,555.80; draft for $3,000. Complaint is made only for failure to receive 29 of these 150 bags of coffee, although judgment was demanded and has been recovered on the theory that none of the coffee against which this draft was drawn, and in reliance upon which the $3,000 was advanced, had arrived; thus resulting in an overcharge against the defendants of $2,436.03. The second item in Schedule A is part of draft No. 438 for $1,000, dated December 19, 1911. The second on Schedule B is way bill No. 238, dated December 18, 1911, 78 hides. The letter of December 19, 1911, inclosing way bill, shows that way bill No. 238 was for 600 cattle hides, $2,640, and 100 bags of coffee, $1,944; against which is a credit balance of $642.23. These drafts were drawn, No. 437 for $2,000, No. 438 for $1,000, and No. 439 for $2,000. All the merchandise arrived except 78 hides. The average value of these hides was $4.40, and, therefore, the shortage was $343.20, instead of $1,000 which has entered into the recovery, an overcharge of $636.80. The third item on Schedule A is part of draft No. 455 for $3,000, dated January 24, 1912. Schedule B shows third item, way bill No. 247, dated January 20, 1912, 10 bags of coffee. The letter of January 24, 1911, shows way bill No. 247 for 100 bags of

coffee; 248, 300 cattle hides; 249, 450 cattle hides; and 250, 450 cattle hides; against which were six drafts. The plaintiff has selected the largest of these, No. 455,. for $3,000, and charged this entire amount against the defendants, although concededly the 1,200 cattle hides and 90 bags of coffee were delivered. The 10 bags alleged not to have been delivered at the price set forth in the way bill would have been worth $194.40, an overcharge of $2,805.60. Without going into detail, the fourth item shows an overcharge of $672; the fifth item an overcharge of $1,337.50. These first five items, therefore, show a claim for damages upon which recovery has been had of $7,908.20 in excess of any sum properly recoverable on the theory of fraud. We have no doubt, if the drafts and way bills were before us, other substantial errors in the amount that has been allowed as damages on the theory of advances made against the fraudulent way bills would appear. The analysis of the 'foregoing items was not for the purpose of reversing the judgment, but to demonstrate that the plaintiffs, under the guise of an action for fraud, were endeavoring to recover not the damages so sustained, but a larger amount which they claimed to be due on the account current.

Lionel Hagenaers, one of the plaintiffs, on cross-examination stated: " Q. So this action was brought to recover the balance due on your accounts stated at the end of 1915, with interest thereafter, was it not? A. Yes, sir." Yet when the defendants sought to establish payment and credits which they claimed substantially reduced or extinguished the balance due on this account, they were met with the objection, which was sustained, that the action was not on the account but in tort for the fraud, and the evidence was excluded.

Treating this action as one to recover damages in fraud, there are several considerations that lead to a reversal of the judgment.

*First.* With full knowledge of the fraud, the plaintiffs granted an extension of time for the payment of the amount due on the current account, and accepted security of the pledged stock and the mortgage, and also exacted interest at twelve per cent per annum on the balance due on the account current to be computed from a date anterior to the date of the

new agreement. The advances on the fraudulent drafts were included in the account current; the balance due largely exceeded the amount of these advances. The plaintiffs, therefore, obtained by the new agreement these advantages: Security for the payment of the entire balance due and an increased rate of interest, to which they were not entitled by the original agreement between the parties, thus affording a consideration for the new agreement. This latter agreement was executed, the security was delivered and sold by the plaintiffs. Payments that were subsequently made were appropriated first to the payment of the interest at the increased rate. The plaintiffs, by making this agreement, waived any right of action that they had upon the fraud, and have only their right of action for the balance due under the account current. In my opinion, these facts proved a waiver of the tort as a matter of law but, in any event, they raised a question for the jury.

*Second.* It was proved that the firm of Pinto, Leite & Nephews was jointly interested with the plaintiffs in the transactions with the defendants. Therefore, it was necessary that they should either have been made parties to the action, or for the plaintiffs to have obtained an assignment of their interest. An assignment to the plaintiffs from Pinto, Leite & Nephews of all their right, title and interest in the account of Caballero Hermanos and to the stocks and mortgage that had been given as collateral security for the payment of any balance due, was offered in evidence. Objection was made that this action was for fraud, and that the assignment did not purport to assign this cause of action. The plaintiffs' counsel stated, " As and on behalf of Pinto, Leite & Nephews, I withdraw for them the tort, and confine their interests to money had and received." And it was admitted solely for the purpose of showing the assignment of the securities mentioned. The court thereafter ruled that the assignment was sufficient to assign the cause of action alleged in the complaint.

If the plaintiffs and Pinto, Leite & Nephews had two causes of action between which they could elect, one in tort and the other in contract, and Pinto, Leite & Nephews assigned the action in contract, they would thereby show their

election as between the two, and by accepting the assignment the plaintiffs ratified the election. They could not thereafter sue and recover upon their interest in tort and upon the assigned interest of Pinto, Leite & Nephews upon the contract. The cause of action could not be split. (*Carvill* v. *Mirror Films, Inc.*, 178 App. Div. 644; affd., 226 N. Y. 683.) The assignment in terms only assigned the interest in the account, and did not transfer any right of action in the tort.

Plaintiffs claim on this appeal that they are entitled on the facts proved to recover for money had and received. That was neither the theory on which the action was brought nor on which it was tried. In fact, when the defendants sought to introduce evidence that would have been admissible under that theory, it was excluded on plaintiffs' objection that the action was for fraud.

The judgment should be reversed and the complaint dismissed, with costs.

CLARKE, P. J., DOWLING and SMITH, JJ., concurred.

Judgment reversed, with costs, and complaint dismissed, with costs.